IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:13CR126 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA PEARSON |
| v. | ) | |
| | ) | |
| | ) | |
| DIVNA MASLENJAK, | ) | GOVERNMENT'S TRIAL BRIEF |
| | ) | |
| | ) | |
| Defendant. | ) | |

  The United States of America, through its counsel, Steven M. Dettelbach, United States Attorney for the Northern District of Ohio, and Phillip J. Tripi and Adam Hollingsworth, Assistant United States Attorneys, submit the following Trial Brief containing relevant facts and law for the consideration of this Honorable Court. Section I of the brief provides a factual summary of the case, Section II provides an overview of the law regarding the offenses contained in the two-count indictment, Section III provides a discussion of the law governing denaturalization following a conviction under 18 U.S.C. § 1425, and Sections IV through VII address certain evidentiary issues likely to be raised during the trial.

                   Respectfully submitted,

                   STEVEN M. DETTELBACH
                   United States Attorney

            By:  s/ Phillip J. Tripi_____
                Phillip J. Tripi (OH: 0017767)
                Adam Hollingsworth (MA: 660727)
                Assistant United States Attorneys
                801 West Superior Avenue, Ste 400
                Cleveland, Ohio 44113
                (216) 622-3769/3781
                (216) 522-8355 (facsimile)
                Phillip.Tripi@usdoj.gov
                Adam.Hollingsworth@usdoj.gov

I. **FACTUAL OVERVIEW**

Defendant, Divna Maslenjak, is a citizen of Bosnia-Herzegovina who entered into the United States as a Refugee through the Port of New York City, NY on September 28, 2000. Defendant currently lives in Akron, Ohio. She filled out, signed, and submitted an N-400 Application for Naturalization with the Department of Homeland Security on December 20, 2006. She was interviewed on the application on July 7, 2007 by District Adjudication Officer J. L. Guevara (hereinafter "DAO Guevara"). At this time, Defendant was verbally asked all of the same questions contained on the Form N-400.

The signed and sworn application for naturalization required Defendant to disclose whether she had ever lied to obtain admission to the United States or any other immigration benefit. Specifically, Defendant was asked on Question 23, "Have you ever given false or misleading information to any U.S. government official while applying for any immigration benefit"? Defendant answered "No" to that question. Question 24 then asked, "Have you ever lied to any U.S. government official to gain entry or admission into the United States?" Defendant again answered "No." However, Defendant knew at that time that she had done both of those things, having lied about her husband's military service in order to gain Refugee status and obtain entry to the United States.

The purpose of Questions 23 and 24, among others on the application, is to ensure that only those lawful permanent residents with "good moral character" are allowed to obtain and enjoy the rights and privileges of being a naturalized citizen of the United States. If an applicant for naturalization is found to lack such good moral character, their application for naturalization should be denied. Defendant attested to the accuracy of answers under oath and under the penalty of perjury during her interview with DAO Guevara. On the basis of her untruthful

responses to Questions 23 and 24, Defendant's application was approved on July 26, 2007 and she was sworn in as a United States citizen on August 3, 2007.

Defendant's husband, Ratko Maslenjak, served during the Bosnian War on behalf of the Army of the Republika Srpska, Military Post 7042, part of the Bratunac Brigade, from at least January 1995 to November 1995. In July 1995, military units of the Army of the Republika Srpska, Drina Corps, including the 5th Company, 1st Battalion Bratunac Brigade, were part of a campaign that resulted in the capture of the United Nations designated safe-area of Srebrenica, and the executions of over 7,000 Bosnian Muslim men and boys. In addition, in violation of international law, these military units forcibly transferred between 25,000 and 35,000 Bosnian Muslim women, children, and elderly men from the safe-area to the demarcation line between Bosnia and Herzegovina. Defendant's husband is listed on Army of the Republika Srpska documents, among other things, showing he was issued a uniform and communications equipment, and was promoted to a higher rank after the massacre at Srebrenica.

Defendant and her husband were admitted as Refugees to the United States in 2000 based on the representations they made during the refugee application process. To gain Refugee status, Defendant was required to fill out Form I-590, Registration for Classification as Refugee, which was filed in April 1998 and approved in October 1999. Defendant omitted any mention of her husband's military service under the section on this form labeled "Military service." Ratko Maslenjak swore on his Form I-590 that the only military service he participated in was compulsory time as a private assigned to communications in the Yugoslavia Military from 1979 to 1980. Ratko also stated under penalty of perjury on the I-590 that he was never a member of a political, professional, or social organization, and failed to disclose his participation in the Army of the Republika Srpska. Both Defendant and her husband were then interviewed regarding these applications. During Defendant's interview with Monica Rahmeyer, she stated

affirmatively that her husband had not participated in the war in Bosnia. In fact, Defendant stated that her husband stayed in Jagodina, Serbia (229 kms from Bratunac) because he did not want to be mobilized by the Army of the Republika Srpska. Defendant further told Rahmeyer in support of her request for refugee status that her husband could not return to Bratunac because he did not serve on behalf of his country during the Bosnian War. All of this she knew to be false.

Ratko Maslenjak was indicted by a Federal Grand Jury in the Northern District of Ohio, in Case No. 5:07cr4, on January 3, 2007 for two counts of violating 18 U.S.C. § 1546(a). He was accused of making false statements with respect to a material fact in a document required by immigration laws and regulations, specifically by failing to list his service in the Army of the Republika Srpska on both his I-590 Registration for Classification as Refugee and his I-485 Application to Register Permanent Residence or Adjust Status. A jury convicted him of these crimes on October 2, 2007 and he was sentenced to two years of probation. The United States then initiated removal proceedings against him, hearings for which began in February 2009. Ratko filed for asylum and a hearing was held on April 28, 2009 to adjudicate his asylum petition.

Defendant testified under oath on April 28, 2009, in support of her husband at his asylum hearing. She was questioned about her statements about Ratko's location and military service during the Bosnian War refugee during cross-examination. Defendant admitted that she knew at the time, but had deliberately failed to tell immigration officials, that Ratko had been in the Republic of Srpska and had served in the military during the Bosnian War. This directly contradicts Defendant's false statement to Rahmeyer that Ratko had not served in the Army of the Republika Srpska and that they feared persecution in part because he had *not* fought in the war.

4

On February 6, 2009, while her husband's deportation and asylum proceedings were still pending, Defendant submitted an I-130 Petition for Alien Relative on her husband's behalf to attempt to secure him continued residence in the United States. Only by virtue of being a naturalized United States citizen was Defendant able to file this petition, and she was required to include the certificate number of her certificate of naturalization on the form. The petition was filed on March 17, 2009 and stamped as "Approved" on November 3, 2009. Based on the immigration law effective at the time of the institution of removal proceedings, Defendant, as Ratko Maslenjak's spouse, was the only member of his family with the ability to prevent his deportation via the I-130 Petition.

On March 5, 2013, a Federal Grand Jury returned a two-count indictment against Defendant. Count 1 of the indictment charges Defendant with knowingly procuring, contrary to law, her naturalization by lying on her N-400 Application for Naturalization and in the accompanying interview, in violation of 18 U.S.C. § 1425(a). The United States will show that Defendant knowingly falsely indicated and subscribed as true, under oath, that she had never gave false or misleading information to any government official, or ever lied to immigration officials to either enter the United States or to obtain an immigration benefit, namely Refugee status, when she knew well that she had lied to officials about her husband's location during the Bosnian War and his military service with the Army of the Republika Srpska. These falsehoods were sufficient to negate the requirement of good moral character necessary for Defendant to lawfully have obtained naturalization.

Count 2 of the indictment charges Defendant with knowingly using an unlawfully issued certificate of naturalization for any purpose, namely for the purpose of filing an I-130 Petition for Alien Relative, in violation of 18 U.S.C. § 1423. The United States will show that Defendant, having knowingly obtained her naturalization contrary to law, knowingly used her naturalization

5

certificate number for purposes of filing an I-130 Petition to assist her husband in securing lawful permanent resident status based on their marriage.

II.     OVERVIEW OF CHARGES: 18 U.S.C. §§ 1425(a) & 1423

   A.     Count 1:  18 U.S.C. § 1425(a).

   Count 1 of the indictment charged that Defendant:

> did knowingly procure, contrary to law, her naturalization, to wit: DIVNA MASLENJAK made material false statements on a Form N-400 Application for Naturalization by answering "no" to question No. 23 which asked whether the applicant had "knowingly given false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion or removal" and by answering "no" to question No. 24 which asked whether the applicant had "ever lied to any U.S. government official to gain entry or admissions into the United States" and answering the same during her interview for naturalization when DIVNA MASLENJAK then knew well that she had lied to government officials when applying for her refugee status and her lawful permanent resident status and thereby gained admissions into the United States, in violation of Title 18, Section 1425(a), United States Code.

In order to convict Defendant under 18 U.S.C. § 1425(a), the United States must prove beyond a reasonable doubt that she knowingly procured her own naturalization contrary to law. The United States must therefore prove: (1) that Defendant procured her naturalization; (2) that such procurement was done contrary to law; and (3) the requisite *mens rea*, which in this case is that Defendant knowingly misrepresented facts on her N-400 Application for Naturalization. There is no question that Defendant applied for and obtained naturalization; therefore, only the second and third elements need be addressed.

       1) Contrary to law

   Lying to immigration officials to secure an immigration benefit defeats an applicant's "good moral character" and renders her ineligible for naturalization.  Section 1425(a) "does not

6

define 'contrary to law,' but the phrase has been interpreted to be the law governing naturalization." *United States v. Agunbiade*, 172 F.3d 864, 1999 WL 26937 *2 (4th Cir. 1999). Applicants seeking to become United States citizens must fully comply with certain statutory prerequisites before taking the oath of allegiance. *Fedorenko v. United States*, 449 U.S. 490, 506 (1981); *United States v. Kalymon*, 541 F.3d 624, 633 (6th Cir. 2008); 8 C.F.R. § 316.2. Title 8, Section 1427, United States Code, sets out the basic statutory requirements that an applicant must meet prior to being eligible for naturalization. Section 1427(a) provides: "No person, except as otherwise provided in this subchapter, shall be naturalized unless such applicant, . . . (3) during all the periods referred to in this subsection[1] has been and still is a person of good moral character . . .." Because Defendant failed to maintain good moral character during this period as a result of her false or misleading statements to Rahmeyer and on her Form N-400, she obtained her naturalization contrary to § 1427(a) and thus contrary to law under § 1425(a).

While the Immigration & Naturalization Act does not define exactly what constitutes "good moral character," it does specify conditions that disqualify applicants under the "good moral character" requirement. 8 U.S.C. § 1101(f). An applicant "shall [not] be regarded as, or found to be, a person of good moral character" if she "has given false testimony for the purpose of obtaining any benefits under [Chapter 12, which includes naturalization]." 8 U.S.C. § 1101(f)(6). The applicable regulations also reinforce this principle. 8 C.F.R. § 316.10(b)(2)(vi) ("An applicant shall be found to lack good moral character if during the statutory period the applicant: . . . Has given false testimony to obtain any benefit from the Act,

---

[1] The statutory period this sentence refers to is the five year period prior to applying for naturalization, in addition to the period between filing the naturalization application and being admitted to citizenship. 8 U.S.C. § 1427(a); 8 C.F.R. § 316.10(a)(1).

if the testimony was made under oath or affirmation and with an intent to obtain an immigration benefit.").

The United States Supreme Court has held that 8 U.S.C. § 1101(f)(6) does not require that false testimony be material in order to negate good moral character. *Kungys v. United States*, 485 U.S. 759, 779 (1988); *cf. United States v. Tongo*, 16 F.3d 1223, 1994 WL 33967, *3-4 (6th Cir. 1994). Therefore, the fact that Defendant knowingly gave false testimony with the intent that she obtain an immigration benefit, namely her naturalization, disqualified her under 8 U.S.C. § 1427(a) regardless of the materiality of her false statements.[2]

In *Tongo*, 1994 WL 33967 at *1, a native of Nigeria was arrested by the police for soliciting a street prostitute. When asked for identification, he presented a Tennessee driver's license in a name different from the name he was to use on his naturalization application. *Id*. At his naturalization interview, the immigration examiner asked the defendant whether he had ever used any other name; he replied that he had not. *Id*. Further, he answered "no" when asked whether he had ever procured anyone for prostitution, then lied a third time when he stated that he was still living with his spouse. *Id*. The defendant was subsequently naturalized. *Id*. When the fact of his prior attest under an alias came to light, however, he was indicted under 18 U.S.C. § 1015(a) for making false statements in a matter relating to naturalization and for naturalization fraud under 18 U.S.C. § 1425. *Id*. at *2.

In that case, the Sixth Circuit considered the interplay between 8 U.S.C. § 1101(f)(6) and 18 U.S.C. § 1015(a) and addressed whether proof of materiality was required for a conviction

---

[2] Courts are split as to whether materiality is required for a conviction under 18 U.S.C. 1425(a). *Compare United States v. Biheiri*, 293 F. Supp. 2d 656, 658-59 (E.D. Va. 2003) (materiality not required) (citing *United States v. Abuagla*, 336 F.3d 277 (4th Cir. 2003)); *with United States v. Puerta*, 982 F.2d 1297, 1301 (9th Cir. 1992) (materiality is an element).

8

under § 1015(a). *Id*. at *4.  The court pointed to a portion of the Supreme Court's discussion in *Kungys*, 485 U.S. at 779-80 (1988), where it held that "[l]iterally read, [8 U.S.C. § 1101(f)(6)] denominates a person to be of bad moral character on account of having given false testimony if he has told *even the most immaterial of lies* with the subjective intent of obtaining immigration or naturalization benefits.  We think it means precisely what it says." (emphasis in *Tongo*, 1994 WL 33967 at *4).  The court in *Tongo* then extended this reasoning to § 1015(a), stating that "[a] plain reading of the statute under which [the defendant] was indicted similarly leaves no room for error  . . . .  There is no reference in the statutory text [of § 1015(a)] to materiality."  Similarly, no such reference to materiality can be found in § 1425(a).  Further, since a conviction under § 1425(a) can be premised, as here, on the defendant's failure to satisfy the statutory prerequisites found in §§ 1427(a) and 1101(f)(6), neither of which contain materiality requirements, the statutory framework does not contemplate materiality.  *See Tongo*, 1994 WL 33967 at *4 ("if Congress wants to add a materiality component to a law, it will do so.")

In addition, the applicable regulations provide that the agency responsible for overseeing naturalization "may take into consideration, as a basis for its determination [of good moral character], the applicant's conduct and acts at any time prior to [the statutory period], if the conduct of the applicant during the statutory period does not reflect that there has been reform of character from an earlier period or if the earlier conduct and acts appear relevant to a determination of the applicant's present moral character."  8 C.F.R. § 316.10(a)(2).  There is no evidence that Defendant reformed her character in the intervening period, for example by volunteering the information about her husband's military activities to ICE or otherwise admitting to having lied to the government in 1998.  Rather, there is an unbroken chain between Defendant's original lie that she told to obtain entry to the United States and Refugee status and the lies she told on her Form N-400 to secure her naturalization; therefore, even if materiality

9

were required under § 1425(a), her misrepresentations were material because it could have influenced the Department of Homeland Security's determination of her application had she truthfully revealed the prior lies.  *See Kungys*, 485 U.S. at 770.

Here, similarly, Defendant rendered herself statutorily ineligible for naturalization as lacking good moral character because she lied to immigration authorities in the past, a fact she failed to disclose in her Form N-400 and interview.

> 2)  Mens rea

The United States must prove beyond a reasonable doubt that Defendant had the requisite *mens rea*, that she "knowingly" obtained her naturalization contrary to law, to convict under 18 U.S.C. § 1425.  Defendant need not have been aware that giving false information during the naturalization process is a crime.  *United States v. Aquino*, 2008 WL 302363, *2 (N.D. Ohio 2008) (citing *United States v. Pasillas-Gaytan*, 192 F.3d 864, 868 (9th Cir. 1999)).  "Rather, the *mens rea* requirement for § 1425 is satisfied with proof that the defendant either knew he was not eligible for naturalization due to his prior conviction, or *knowingly misstated his criminal record* on his application or his interviews." *Id*. (emphasis added).

Thus, it does not matter here whether Defendant was aware that, by lying under oath and under penalty of perjury on her N-400 Application, she could be prosecuted under § 1425 or any other immigration statute:  the *mens rea* requirement of 1425(a) is satisfied in this case because Defendant knowingly answered falsely that she had not lied to United States officials when she applied for entry to the United States and for Refugee status.

**B.    Count 2:  18 U.S.C. § 1423.**

Count 2 of the indictment charged that Defendant:

> did knowingly use an unlawfully issued certificate of naturalization for the purpose of filing a Form I-130 Petition for Alien Relative to assist her husband in securing his lawful permanent resident status based upon their marriage, said certificate of naturalization having been obtained contrary to law by DIVNA MASLENJAK's material false statements made during the application process for naturalization, in violation of Title 18, Section 1423, United States Code.

In order to convict Defendant of violating § 1423, the United States must prove beyond a reasonable doubt that:  (1) Defendant obtained naturalization; (2) Defendant's naturalization was unlawfully issued; and (3) Defendant used her naturalization for any purpose.  If Defendant's naturalization is determined to have been procured contrary to law under 18 U.S.C. § 1425, as alleged in Count 1, the United States need only prove beyond a reasonable doubt that, by filing the I-130 Petition, Defendant "used" her unlawfully procured certificate of naturalization within the meaning of § 1423.  The question of what constitutes "use" of such a certificate under this statute, if it has ever been litigated, is one that has not been addressed by any federal court in a reported opinion.

There is no indication, within the statute or otherwise, that the term "use" in 18 U.S.C. § 1423 should be given anything other than its "ordinary, contemporary, common meaning," in keeping with the "fundamental canon[s] of statutory construction."  *Perrin v. United States*, 444 U.S. 37, 42 (1979).  A typical definition of the verb for of "use" is "to put into action or service," "avail oneself of," or "utilize."  *Webster's New Collegiate Dictionary* 1288 (Henry Bosley Woolf, ed., G & C Merriam Co. 1976).  Defendant was required to include her naturalization certificate number on the I-130 Petition.  The certificate number is merely a representation that the certificate actually exists and that the person who holds it is a naturalized citizen.  Defendant

11

put the certificate into service because, without it, she would not have been able to complete and file the petition.  Defendant clearly used her certificate of naturalization in the ordinary sense of the word when she filed the I-130 Petition in an attempt to prevent her husband from being deported after his conviction for immigration fraud.

Section 1423 was originally enacted in 1948 to consolidate several subsections and the general punishment provision of 8 U.S.C. § 746 (1940), which appear to have penalized only the use of an unlawfully issued naturalization certificate "for the purpose of voting."  18 U.S.C. § 1423, Editor's and Revisor's Notes (Westlaw).  Congress eliminated the reference to voting and broadened the reach of the statute by use of the phrase "for any purpose."  *Id*.  This expansive language is clear evidence that Congress intended to penalize conduct by which a person who has unlawfully obtained naturalization then uses that naturalization for her benefit or the benefit of another, either from the government or otherwise.

### III.   OVERVIEW OF LAW OF AUTOMATIC DENATURALIZATION

Under 8 U.S.C.§ 1451(e), the court must revoke the citizenship of a naturalized person who is convicted of naturalization fraud under 18 U.S.C. §1425 and "declare the certificate of naturalization of such person to be canceled."  The language of 1451 clearly reveals the legislative intent:  the Court is vested with both the jurisdiction and the obligation to revoke a defendant's naturalization upon conviction for naturalization fraud.

Courts have upheld and applied 8 U.S.C. § 1451.  In *United States v. Moses*, 94 F.3d 182, 184 (5th Cir. 1996), the district court revoked the defendant's naturalization and declared void the final order admitting the defendant to citizenship following his conviction for naturalization fraud.  There, the Fifth Circuit upheld the revocation, noting that § 1451 "is mandatory – the district court *shall* revoke the citizenship if the individual is convicted under section 1425."  *Id*. at 188 (emphasis supplied); *see also United States v. Inocencio*, 328 F.3d 1207, 1209 (9th Cir.

12

2003) ("Congress plainly contemplated that district courts having jurisdiction over criminal trials [for § 1425 charges] would automatically revoke naturalization upon such convictions.").

Thus, if Defendant is convicted of violating 18 U.S.C. § 1425, this Court must revoke her naturalization pursuant to 8 U.S.C. § 1451.

**IV.  ADMISSIBILITY OF RECORD OF RATKO MASLENJAK'S ASYLUM HEARING**

The United States may introduce evidence in the form of an official record of Defendant's testimony during her husband's asylum hearing when she was asked under oath about the facts and circumstances of her refugee application.  In her sworn testimony, Defendant admitted to knowing about her husband's military service with the Army of the Republika Srpska.  This evidence will be admissible over any hearsay objection based on Federal Rule of Evidence 801(d).

Under Rule 801(d), certain types of statements are never considered hearsay.  Among these is a "statement [] offered against an opposing party [that]: (A) was made by the party in an individual or representative capacity."  *Id*.  In this case, Defendant is the party opponent to the United States and any statements purported to have been made by her are thus admissible over hearsay objections.

**V.  AUTHENTICATION OF DOCUMENTS**

The United States will introduce various documents from Defendant's alien file including the forms Defendant filed while seeking Refugee status in 1998 and her N-400 Application for Naturalization, as well as the official record of Ratko Maslenjak's asylum hearing.  According to Rule 901(a), "[t]he requirement of authentication or identification condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Rush v. Ill. Cent. R.R. Co.*, 399 F.3d 705, 722 (6th Cir. 2005).  This

13

standard requires only that the United States "make out a prima facie case" that the documents are what they purport to be. *United States v. Caldwell*, 776 F.2d 989, 1002 (11th Cir. 1985).

Authentication or identification under Rule 901 can consist of: "Testimony of witness with knowledge" that a matter is what it is claimed to be, *United States v. Carriger*, 592 F.2d 312, 315 (6th Cir. 1979); "[d]istinctive characteristics and the like," such as appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunctions with the circumstances, *United States v. Jones*, 107 F.3d 1147, 1150 (6th Cir. 1997); and evidence that "a document was recorded or filed in a public office as authorized by law."

Additionally, certain documents that will be offered, such as the record of Ratko Maslenjak's asylum hearing, are self-authenticating under Fed. R. Evid. 902(4) because they are certified copies of public records.

The United States respectfully submits that each document to be offered at trial will be authenticated by an appropriate witness who either has knowledge of the document sufficient to testify to its authenticity, can identify distinctive characteristics tending to show authenticity, or can testify that the document is a certified public record.

## VI.     ADMISSIBILITY OF GOVERNMENT RECORDS

Government records will be introduced relating to the indictment. These records are admissible pursuant to Fed. R. Evid. 803(8); which provides in pertinent as follows:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, . . . unless the sources of information or other circumstances indicate lack of trustworthiness.

14

Business records have been found to be non-testimonial evidence and are therefore not subject to the Confrontation Clause of the Sixth Amendment. *Crawford v. Washington*, 541 U.S. 36, 56 (2004); *see also*, *United States v. Jamieson*, 427 F.3d 394, 411 (6th Cir. 2005) (finding business records are not "formal statements" or "solemn declarations"). The Sixth Circuit has allowed Alien Registration files into evidence under Fed. R. 803(8). *See United States v. Hodulik*, 44 Fed. App. 656, 661-62 (6th Cir. 2002). Post- *Crawford*, the Fifth Circuit, has likened immigration files to business records saying, "the [immigration] file contained statements that by their nature were not testimonial." *United States v. Rueda-Rivera*, 396 F.3d 678, 680 (5th Cir. 2005) (citing *United States v. Gutierrez-Gonzales*, 111 Fed. Appx. 732, 734 (5th Cir. 2004) (unpublished)). The Ninth Circuit explained that a government record, "not made in anticipation of litigation . . . is simply a routine, objective, cataloging of an unambiguous factual matter" and therefore is non-testimonial. *United States v. Bahena-Cardenas*, 411 F.3d 1067, 1075 (9th Cir. 2005).

Public documents are self-authenticating pursuant to Federal Rule of Evidence 901 in the following situations:

> (1) [a] document bearing a seal purporting to be that of the United States, or of any State, district, Commonwealth, territory, . . . or of a political subdivision, officer, or agency thereof, and a signature purporting to be an attestation or execution.
>
> (2) [a] document purporting to bear the signature in the official capacity of an officer or employee of any entity included in paragraph (1) hereof, having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine.
>
> * * *
>
> (4) [a] copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed an actually recorded or filed in a public office, including data compilations in

15

>any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of this rule or complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority.

Fed. R. Evid. 901. Therefore, separate extrinsic evidence is unnecessary.

## VII. COLLATERAL CONSEQUENCES OF CONVICTION

The United States anticipates that Defendant may introduce testimony or other evidence regarding the collateral consequences of a conviction in this case, particularly regarding deportation and future exclusion from the United States. The United States requests that any reference by Defendant to the future consequences of a guilty verdict be forbidden. The potential consequences of a guilty verdict are entirely collateral to this case. Any such references would be irrelevant to the question of the defendant's guilt or innocence and infringe upon the role of the jury as fact-finder. The sole purpose of such references would be to appeal to the emotions of the jury and such inflammatory rhetoric is impermissible under well-established precedent.

As an initial matter, any references to the future consequences of a guilty verdict are inadmissible under the Federal Rules of Evidence. Relevant evidence must be "of consequence in determining the action." Fed. R. Evid. 401. If evidence offered is not of consequence, it is inadmissible as irrelevant. Fed. R. Evid. 402. Any information offered by Defendant regarding the future consequences of a guilty verdict would have no bearing on Defendant's guilt or innocence, which is the ultimate issue to be determined by the jury at trial.

Furthermore, such information would be unfairly prejudicial under Fed. R. Evid. 403. It would have no probative value as to guilt and would be intended only to appeal directly to the jury's emotions and sympathies. The Sixth Circuit has held that Rule 403 protects against precisely this sort of "evidence which tends to suggest decision on an improper basis." *United*

16

*States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986); *see United States v. Daulton*, 266 Fed. Appx. 381, 385 (6th Cir. 2008).

Evidence regarding the future consequences of a guilty verdict is improper not only because it is irrelevant, but also because it impinges upon the traditional function of the jury. In *Shannon v. United States*, 512 U.S. 573, 579 (1994), the Supreme Court stated that "[t]he jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged." In that case, the defendant requested a jury instruction stating that the defendant would be involuntarily committed if found not guilty by reason of insanity. *Id.* at 577-78. The trial court declined to include such an instruction and the Supreme Court affirmed. *Id*. at 588. The Court described providing the jury with information as to the consequences of a verdict as "irrelevant to the jury's task" because it "invites them to ponder matters that are not within their province, distracts them from their fact-finding responsibilities, and creates a strong possibility of confusion." *Id*. at 579; *see also United States v. Chesney*, 86 F.3d 564, 574 (6th Cir. 1996) ("argument about possible punishment in [defendant's] case is foreclosed by well-settled precedent.").

In accordance with these precedents, this Court should not admit any testimony or argument offered by the Defendant regarding the collateral consequences of conviction, particularly deportation or future exclusion from the United States.

**CERTIFICATE OF SERVICE**

I hereby certify that on April 4, 2014, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail.  Parties may access this filing through the Court's system.

/s/ Adam Hollingsworth
Adam Hollingsworth
Assistant United States Attorney